UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER SIATIU, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JM FISHERIES, LLC, et al.,<br><br>Defendants. | Case No.: 3:24-cv-1235-CAB-GC<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>**[Doc. No. 33]** |

Plaintiffs Christopher Siatiu, Faasaoina Atulu, and the Estate of Hemana Siatiu bring suit against Defendants JM Fisheries LLC, G.S Fisheries Inc., James Sousa, and Does 1–20 for negligence pursuant to 33 U.S.C. § 905(b). Before the Court is Defendants' motion for summary judgment. [Doc. No. 33.] The matter is fully briefed. [*See* Doc. Nos. 37–38.] Oral argument was held on May 26, 2026. [Doc. No. 44.] Having considered the submissions of the parties and oral argument, the Court **GRANTS** the motion for summary judgment.

## I. BACKGROUND

This case arises from the tragic death of Hemana Siatiu ("Decedent"). Decedent was a maritime laborer employed by Purse Seine Samoa, Inc. ("PSS")[1], in Pago Pago,

---

[1] PSS is not a party to this lawsuit.

3:24-cv-1235-CAB-GC

American Samoa.  On May 2, 2022, Decedent was performing repair work in PSS's net yard on the purse seine net of F/V Captain Vincent Gann ("Vessel"), a U.S. flag fishing vessel owned by Defendant JM Fisheries and managed by Defendants G.S. Fisheries and James Sousa.  The Vessel itself was not at the net yard but unloading its catch at the nearby cannery.

As a PSS crane operator fed the Vessel's net through an overhead power block, a metal ring on the net detached and fell, striking Decedent on the head instantly killing him.  The only Vessel employee present during the incident was deck boss John Balelo.  Plaintiffs argue that Defendants turning over their net to PSS with the rings still attached created a hazard to Decedent.  They also argue that Balelo was involved in the repair operation and should not have allowed a tangle of net, webbing, and rings to roll through the power block while Decedent stood underneath.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material only if it could affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" when it could "lead a rational trier of fact to find for the non-moving party[.]"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion.  *Anderson*, 477 U.S. at 248.  Reasonable inferences must be drawn in the nonmoving party's favor, but such inferences are limited to those upon which a reasonable jury might return a verdict.  *U.S. ex. rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995).

3:24-cv-1235-CAB-GC

### III.    DISCUSSION

Defendants argue that they are not liable for negligence because they did not breach any duty owed to Decedent.  Additionally, they contend that Defendant James Sousa should be dismissed, no Plaintiff has standing under the survival action, Plaintiff Faasaoina Atulu has no standing under the wrongful death action, no damages are available under the survival action, and that punitive damages are not available.

### A.    Negligence

Section 905(b) of the Longshore and Harbor Workers' Compensation Act establishes the right of a longshoreman to recover damages from a shipowner under a negligence cause of action.  *See* 33 U.S.C. § 905(b).  A "vessel owes to the stevedore and his longshoreman employees the duty of exercising due care 'under the circumstances.'" *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 166 (1981).  That duty of care also applies to repairmen working on a vessel.  *See Cook v. Exxon Shipping Co.*, 762 F.2d 750, 752 (9th Cir. 1985), *amended on reh'g*, 773 F.2d 1001 (9th Cir. 1985).  There are "'five distinct aspects of that duty': (1) the turnover duty of safe condition; (2) the turnover duty to warn; (3) the active involvement duty; (4) the active control duty; and (5) the intervention duty."  *Marable v. United States*, No. 14-CV-1206-WQH-KSC, 2017 WL 6541021, at *4 (S.D. Cal. Dec. 21, 2017) (quoting *Bjaranson v. Botelho Shipping Corp., Manila*, 873 F.2d 1204, 1207 (9th Cir. 1989)).

### 1.    Turnover Duty of Safe Condition

Plaintiffs argue that the Vessel's net was in a dangerous condition when it was given to PSS because the metal purse rings on the net were not removed.  They cite two experts who state that the rings are dangerous.  However, a vessel and its equipment are not necessarily required to be in perfectly safe condition when turned over because it is expected that the work "will be conducted by an 'expert and experienced' stevedore." *Bjaranson*, 873 F.2d at 1207–08.  Indeed, "certain dangers that may be hazardous to unskilled persons need not be remedied if an expert and experienced stevedore could safely work around them."  *Id.* at 1208.  Rather, the turnover duty of safe condition requires

3:24-cv-1235-CAB-GC

vessels to exercise "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property." *Id.* at 1207.

In *Bjaranson*, the plaintiff was unloading cargo aboard a vessel when he attempted to descend a ladder in pitch darkness; he fell to the deck after reaching for a hand hold that was not there. The plaintiff sought to use the ladder despite the darkness because his path was blocked by the leg of a loading crane. The Ninth Circuit held that while a reasonable juror could find the ladder a hazard, the plaintiff failed to show that an experienced stevedore "would not 'be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property.'" *Id.* at 1208 (quoting *Scindia*, 451 U.S. at 167). The Court also noted an experienced stevedore could have easily avoided the hazard of the ladder by asking the crane operator to move the crane's leg or by squeezing around the leg of the crane.

Plaintiffs similarly fail to show that keeping the rings on the Vessel's net when turning it over to PSS rendered the net such that an experienced repairman could not safely complete his work. PSS did not require vessels to remove rings from nets before turning them over until after this incident; PSS's general manager stated that he had never seen someone killed with a purse ring in over 40 years. [Doc. No. 33-3 at 8–9.] Indeed, this indicates that PSS had been able to safely work around any danger presented by nets with purse rings that were given to them to repair. To be sure, taking the rings off the net before transferring it to PSS may have been safer—as Plaintiffs argue and Balelo concedes—but so too would have been placing handrails on the ladder at issue in *Bjaranson*. Moreover, like the *Bjaranson* plaintiff, PSS and Decedent could have easily avoided the hazard by removing the rings themselves, which Plaintiffs' expert confirms can be done easily and quickly. [Doc. No. 37-14 at 3]; *see Scheuring v. Traylor Bros.*, 476 F.3d 781, 790–91 (9th Cir. 2007) (noting the Ninth Circuit considered whether "the plaintiff could have avoided

the hazardous situation, and therefore . . . failed to show that he acted as an expert and experienced stevedore" when analyzing the turnover duty of safe condition).

Plaintiffs cite, *inter alia*, *Thomas v. Newtorn Intern. Enterprises* where the Ninth Circuit found the district court erred in granting summary judgment for a vessel because the worker produced evidence that the shipowner turned over the vessel with a hazardous condition. 42 F.3d 1266, 1269 (9th Cir. 1994); [Doc. No. 37 at 22]. There, the worker fell through an uncovered and unguarded hatch opening that was close to the bottom of a ladder which the worker had just descended. *Id.* at 1268. The Ninth Circuit found summary judgment was precluded by a declaration from a longshore worker who declared that "an unguarded, uncovered . . . manhole positioned within two feet of the bottom of an access ladder [was] an *extremely unusual* and hazardous condition." *Id.* at 1269 (emphasis added). Moreover, the worker stated it was customary for deck openings and manholes to be either covered or barricaded, and that this was not a condition even an experienced worker would have looked for or anticipated. *Id.*

This case is distinguishable. While Plaintiffs' experts state that the rings are a safety hazard, they do not state—nor does other evidence show—that keeping the rings on the net when turning it over for repairs was *extremely unusual* or that it was customary to remove them. Rather, PSS's longstanding practice demonstrates it was not. Moreover, unlike the latent, uncovered manhole, the presence of the rings on the net was open and obvious when the net was turned over to PSS. *See Celestine v. Lykes Bros. S.S. Co.*, 729 F. Supp. 691, 693 (N.D. Cal. 1989) ("[T]he turnover duty is not breached if the [hazard] causing the injury was open and obvious and one that the longshoreman should have seen." (internal quotation marks omitted)). Citing the Southern District of Texas, Plaintiffs argue that the fact that a hazard is open and obvious does not exonerate the vessel if it is shown that the workers' only alternative to facing the hazard is unduly impractical and time consuming. [Doc. No. 37 at 22.] However, again, Plaintiffs' *own expert* states that "[r]emoval of the purse rings from the net is an easy task that is not time consuming." [Doc. No. 37-14 at

3:24-cv-1235-CAB-GC

3.] Thus, it was neither impractical nor time consuming for PSS's workers to avoid the hazard posed by the rings remaining on the net.

Plaintiffs additionally argue that regardless of the openness and obviousness of a hazard, a vessel is liable for breach of the duty of safe turnover if it knows that the maritime worker will confront the hazard. [Doc. No. 37 at 21 (citing *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 409–10 (3d. Cir. 2006)).] They contend that the fact that PSS did not require the removal of rings evidences that Defendants were aware that PSS workers would confront the rings. Even so, a vessel is only negligent in such a circumstance if the vessel should have expected that an expert stevedore could not "conduct cargo operations reasonably safely." *Kirsch v. Plovidba*, 971 F.2d 1026, 1031 (3d Cir. 1992). Plaintiffs' evidence is insufficient to create a genuine dispute of material fact that the Defendants should have expected that PSS, which specializes in purse seine net repair and never required or expected the removal of rings, could not conduct repair operations safely. Indeed, at the same time that Plaintiffs argue that Defendants knew or should have known that leaving the rings on the net posed an unreasonable danger such that PSS could not safely repair the net, Plaintiffs also argue that PSS "did not know that leaving the purse rings on the Net posed a risk of death or serious bodily harm to its workers." [Doc. No. 37 at 23.] A reasonable juror simply could not find that Defendants knew or should have known of an unreasonable danger that PSS themselves, as net repairing specialists who knew the rings were still attached, did not know of or anticipate. *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019) (holding that summary judgment asks whether "a rational trier of fact might resolve the issue in favor of the nonmoving party").

The Court **GRANTS** summary judgment for Defendants on the issue of the breach of the turnover duty of safe condition.

### 2.    Turnover Duty to Warn

Plaintiffs argue that Defendants put forth no evidence that they warned PSS that the purse rings "created a hazardous condition in the workplace when they put the net in PSS net yard." [Doc. No. 37 at 23.] A vessel, however, is required to warn only of (1) hazards

3:24-cv-1235-CAB-GC

(2) that it knows or should know of and (3) that are not known by a reasonably competent stevedore and would not be obvious to or anticipated by him. *See Scindia*, 451 U.S. at 167.

As the Court explained with respect to the turnover duty of safe condition, Plaintiffs have not demonstrated a genuine dispute of material fact that the Vessel knew that turning over the net with the rings still attached was a hazard such that PSS could not work in reasonable safety. Even if the Vessel knew or should have known this, Plaintiffs offer no evidence that PSS did not know the rings were on the net. The duty to warn focuses on "*latent* hazards that would not be obvious to or anticipated by a competent stevedore" and the Ninth Circuit has stated that the duty "kicks in because the vessel owner is in the *best position* to detect and avoid harm." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 920 (9th Cir. 2017) (emphases added). The rings on the net were obvious to PSS, and the Vessel was not in any better position than PSS, which specializes in net repair, to detect and avoid any harm from the rings when the net was turned over. *See Haines v. Honolulu Shipyard, Inc.*, 125 F. Supp. 2d 1020, 1029 (D. Haw. 2000) (finding no breach of turnover duty to warn where plaintiff had experience repairing vessels, and the conditions and structural design of the tank he was repairing were open and obvious to him). If the Vessel should have known of any hazard posed by the rings, then there is no reason the same would not be expected for PSS as net repair experts who knew the rings were still attached to the net.

The Court **GRANTS** summary judgment for Defendants on the issue of breach of the turnover duty to warn.

### 3.    Active Involvement & Control Duties

Plaintiffs make clear that the two previous duties concerned the condition of the net when Defendants turned it over to PSS. The Court notes however that Plaintiffs' arguments on the remaining duties concern the hazard posed by rolling a net through the power block while it is tangled with rings and chains.

The active involvement and active control duties are related and typically construed together. *See Bjaranson*, 873 F.2d at 1207. They "require[] the vessel owner to act reasonably if it actively participates in [repair] operations, and to avoid exposing the

stevedores to harm from hazards they may encounter in areas, or from equipment, under the active control of the ship." *Christensen v. Georgia Pacific Corp.*, 279 F.3d 807, 812 (9th Cir. 2002). Thus, the first question is whether Defendants actively controlled the relevant area or participated in operations therein, and second whether they exercised due care. *See Scindia*, 451 U.S. at 167.

As to the first question, the Court finds that Plaintiffs carry their burden to establish a genuine issue of material fact. Defendants argue that they were allegedly "not involved in the net repair operations whatsoever." [Doc. No. 33 at 15.] Plaintiffs, however, cite to evidence that Balelo, the Vessel's deck boss, was present at PSS's net yard during repair work, physically helped untangle rings and chains from the net before the operation commenced, and gave the "go ahead" to continue rolling the net through the power block right before the accident occurred. [Doc. No. 37 at 24–26; Doc. No 37-2 at 48–49, 51, 68–69.] Even if Balelo did not actively "control" the area, there is genuine dispute as to whether he was actively participating in repair operations.

As to the second question, however, the Court finds that Plaintiffs fail to carry their burden. Plaintiffs offer no evidence that Balelo acted unreasonably or without due care during repairs.

The Court finds *Lambert v. U.S.* to be instructive. No. C 11-725 MMC, 2013 WL 2403492 (N.D. Cal. May 31, 2013). There, plaintiff, a ship repair contractor, was investigating an issue below deck with the ship's chief engineer who was required to escort plaintiff. *Id.* at *1, 3. There was no real dispute that defendant was in active control of the area where the accident occurred. *Id.* at *3. At one point, the chief engineer told plaintiff to follow him through a passageway in a cargo hold but plaintiff fell through a gap and suffered injuries. *Id.* The court found that the chief engineer failed to exercise due care because he did not inform plaintiff of the gap despite knowing that (1) plaintiff was not familiar with the area, (2) it was almost totally dark, and (3) that the gap presented a significant risk of serious injury. *Id.* at *4.

3:24-cv-1235-CAB-GC

Unlike *Lambert*, Decedent was working during the morning in a familiar place—his employer's net yard—and knew the rings were on the net. Additionally, Plaintiffs offer no evidence that Balelo knew[2], or should have known, that rolling the net with the rings attached through a power block presented a significant risk of serious injury to Decedent.[3] Instead, Plaintiffs' proffered evidence and argument supports that Balelo knew or should have known that a net *tangled* with rings should not be rolled through a power block. [Doc. No. 37 at 9 ("*[T]angles* are never supposed to [be] rolled through the power block" (emphasis added)); Doc. No. 37-14 at 4 (Plaintiffs' expert: "Balelo had a duty to ensure that no one was ever standing below a tangle of chain and rings underneath the power block. If a tangle of chains and rings [was] being raised up to the power block, it was Balelo's job [to intervene]."); Doc. No. 37-17 at 4 (Plaintiffs' expert: "[Another employee] could not see the tangle of rings and chains going up over Decedent's head.").] The record before the Court however contains no evidence that Balelo ever allowed or ordered the net to be rolled above Decedent while it was tangled with chains and rings. To the contrary, the record shows that Balelo actually cleared the net of any tangles before it was rolled through the power block. [*See* Doc. No. 37-3 at 41–42 ("So when the net roll – because they already fix the tangle chain[.]"); Doc. No. 37-2 at 49, 51 ("Q: And what happened after you started to untangle the net? What happened next? A: We roll the net."); Doc. No. 37-2 at 51 ("Q: Okay. So when you untangled the net . . . who gave the signal to start rolling the net after you untangled it?"); Doc. No. 37-4 at 38 ("We don't roll tangled rings.").]

The evidence does not show that Balelo failed to exercise due care and gave the go ahead for the net to be rolled through the power block *while it was tangled with chains and*

---

[2] Balelo states that it was normal to roll rings through the power block with people standing underneath the power block and that he was not aware there was any kind of danger posed to anyone. [Doc. No. 33-2 at 22–24.]

[3] While Balelo agreed that having rings in the net when it was delivered to the PSS made the work more dangerous, [Doc. No. 37-4 at 40], more danger is relative and does not show that Balelo knew that it carried a significant risk of serious injury and prevented PSS from carrying out repairs safely. *See Bjaranson*, 873 F.2d at 1207.

3:24-cv-1235-CAB-GC

*rings*.  While a tragic accident occurred, that fact itself is not evidence of unreasonable or negligent conduct.  *See Bowman-Hicks Lumber Co. v. Robinson*, 16 F.2d 240, 242 (9th Cir. 1926) ("The happening of an accident is not proof in itself of negligence[.]").

The Court **GRANTS** summary judgment for Defendants on the issue of breach of the active control/involvement duty.

### 4.    Duty to Intervene

"A vessel has a duty to intervene and take reasonable steps to eliminate or correct any dangerous conditions.  This duty arises only if the vessel knows or should know of the condition, realizes or should realize the condition presents an unreasonable risk of harm, and knows or should know that the stevedore, as a result of an obviously improvident judgment, has failed to remedy the situation."  *Torres v. Johnson Lines*, 932 F.2d 748, 750 (9th Cir. 1991).

Plaintiffs argue that Balelo had a duty to intervene and stop the net from being rolled through the power block when it was tangled and Decedent was standing underneath.  However, again, the evidence shows Balelo cleared any tangles before the net was rolled through the power block.  Thus, Plaintiffs fail to show that Balelo knew or should have known that there was a tangle being fed into the power block and that PSS had failed to remedy the situation, such that he had a duty to intervene.

The Court **GRANTS** summary judgment for Defendants on the issue of breach of the duty to intervene.

### 5.  Negligence *Per Se*

Plaintiffs also argue that Defendants committed negligence *per se* because PSS was cited for violations by the Occupational Safety and Health Administration ("OSHA") and the Vessel should be considered a controlling employer over the net yard.  [Doc. No. 37 at 19–20, 30–31.]  Beyond the fact that OSHA investigated the incident and never cited Defendants, the Ninth Circuit has expressly declined to recognize violation of an OSHA regulation as negligence *per se* in the context of the Federal Employers' Liability Act.  *See Robertson v. Burlington N. R. Co.*, 32 F.3d 408, 410 (9th Cir. 1994).  Moreover, the

3:24-cv-1235-CAB-GC

Western District of Washington found in *McCoy v. Foss Maritime Co.* that a maritime company's failure to comply with OSHA regulations regarding noise exposure on uninspected vessels in navigable waters did not constitute negligence *per se*. 442 F. Supp. 2d 1103, 1112 (W.D. Wash. 2006). The Court finds these cases persuasive on the issue and rejects Plaintiffs' argument.

### B.    Remaining Issues

Given that the Court grants summary judgment for Defendants on the underlying negligence claim, the Court declines to address the other arguments Defendants make in their motion for summary judgment, including availability of damages and standing. *See Millia Promotional Servs. v. Arizona Dep't of Econ. Sec.*, 650 F. Supp. 3d 814, 823 n.2 (D. Ariz. 2023) ("Because the Court grants Defendants' Motion for Summary Judgment on other grounds, it will not address standing."), *aff'd sub nom.*, *Millia Promotional Servs. v. Arizona through Arizona Dep't of Econ. Sec., Div. of Emp. & Rehab. Servs.*, No. 23-15180, 2024 WL 1596460 (9th Cir. Apr. 12, 2024).

### IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** the motion for summary judgment.

It is **SO ORDERED**.

Dated: July 1, 2026

_____
Hon. Cathy Ann Bencivengo
United States District Judge

11

3:24-cv-1235-CAB-GC